# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF LOUISIANA

HOMEPSIRE MORTGAGE CORPORATION    )
9711 Washingtonian Blvd., Suite 500    )
Gaithersburg, MD 20878    )
    )
     Plaintiff    )
    )
v.    )  Civil Case No. 3:21-cv-306
    )
GOLD STAR MORTGAGE FINANCIAL    )
GROUP, CORPORATION t/a Gold Star Mortgage    )
Financial Group    )
100 Phoenix Drive, Suite 300    )
Ann Arbor, MI 48108    )
Serve:  CT Corporation System    )
   Registered Agent    )
   3867 Plaza Tower Drive    )
   Baton Rouge, LA 70816    )
    )
ERIC TODD MITCHELL    )
5250 Lankershim Blvd., Suite 500, Office 526    )
North Hollywood, CA 91601    )
    )
     Defendants    )

## COMPLAINT

Plaintiff, Homespire Mortgage Corporation, for its Complaint against Gold Star Mortgage Financial Group, Corporation t/a Gold Star Mortgage Financial Group and Eric Todd Mitchell, states as follows:

## PARTIES

1. Plaintiff, Homespire Mortgage Corporation ("Homespire") is a Maryland corporation with its principal place of business at 9711 Washingtonian Blvd., Suite 500, Gaithersburg, Maryland.

2.      Defendant, Gold Star Mortgage Financial Group, Corporation t/a Gold Star Mortgage Financial Group ("Gold Star") is a Michigan corporation, with its headquarters located in Anne Arbor, Michigan.  This Court has personal jurisdiction over Gold Star because Gold Star is authorized to and does regularly transact business in the State of Louisiana, including at its Baton Rouge, Louisiana offices located at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816; 12818 Stutgart Avenue, Baton Rouge, LA 70816; and 10101 Park Rowe Ave., Suite 120, Baton Rouge, LA 70810.  Additionally, Gold Star is also a licensed mortgage lender in Louisiana and the controversy herein arises out of and is related to Gold Star's contacts with the State of Louisiana.

3.      Defendant Eric Mitchell ("Mitchell") is an individual and, on information and belief, is domiciled in the state of California.  This Court has personal jurisdiction over Mitchell because, as more fully set forth below, Mitchell regularly conducts business in Louisiana, and the controversy herein arises from the specific transactions complained of herein in which Mitchell purposefully directed his activities of growing Gold Star's business by intentionally interfering with the contracts between Homespire and its employee(s) and/or aiding and abetting the breach of those agreements by Homespire's employee(s).

**JURISDICTION AND VENUE**

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) it is between citizens of different States, and (ii) the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.      Venue is appropriate in this Division pursuant to 28 U.S.C. § 1391 because, on information and belief, Gold Star maintains a branch office in this Division, and it is where  some of the events or omissions giving rise to the claims asserted herein occurred.

2

## FACTUAL BACKGROUND

**A.**   **Homespire and former employees, Jake Gregory and Baton Rouge Branch**

6.      Homespire is a mortgage lender with branch offices in numerous states, including formerly in Martinsburg, West Virginia and Baton Rouge, Louisiana.  The names and contact information of persons solicited by or referred to Homespire for mortgage loans, and that make application for mortgage loans, is confidential information of Homespire that is not generally known to other persons or entities, or readily ascertainable by proper means by others.

7.      Homespire employed Jake Gregory ("Gregory") as a licensed mortgage loan originator and branch manager of its Martinsburg, West Virginia branch office beginning on or about May 1, 2018.  At the time of his hire, Gregory signed an Employment Agreement dated May 1, 2018.

8.      Homespire employed Katherine Robins ("Robins") as a licensed mortgage loan originator and branch manager of its Baton Rouge, Louisiana branch ("Baton Rouge branch") office beginning on or about December 4, 2019.  At the time of her hire, Robins signed an Employment Agreement dated December 2, 2019.

9.      Homespire employed Amy LeBlanc ("LeBlanc") as a licensed mortgage loan originator in its Baton Rouge branch office beginning on or about February 27, 2020.  At the time of her hire, LeBlanc signed an Employment Agreement dated February 13, 2020.

10.      Homespire employed Nathan Nguyen ("Nguyen") as a licensed mortgage loan originator in its Baton Rouge branch office beginning on or about June 29, 2020.  Nguyen signed an Employment Agreement with Homespire dated July 1, 2020.

11.      Homespire employed Mary Kaye Thomas ("Thomas") as a licensed mortgage loan originator in its Baton Rouge branch office beginning on or about January 4, 2021.  At the time of

her hire, Thomas signed an Employment Agreement dated December 18, 2020 (ratified by

Homespire on December 19, 2020).

14. Homespire employed Jack Sanith ("Sanith") as a licensed mortgage loan originator

in its Baton Rouge branch office beginning on or about January 4, 2021.  At the time of his hire,

Sanith signed an Employment Agreement dated December 22, 2020.

13. Homespire employed Vicki Tran ("Tran") as a loan officer assistant in its Baton

Rouge branch office beginning on or about January 25, 2021.  At the time of her hire, Tran signed

an Employment Agreement dated February 13, 2020.

14. Each Employment Agreement between Homespire and Gregory, Robins, LeBlanc,

Sanith, Nguyen, Thomas and Tran contains, *inter alia*, the following provisions:

Section 1:

A. Employee acknowledges that, in connection with Employee's employment
with Employer, and in consideration of this Agreement, Employee will receive
substantial consideration, including, but not limited to Commissions and or Salary,
training, confidential and proprietary information and trade secrets. Such benefits
are conferred by Employer upon Employee only because and on condition of
Employee's willingness to commit his or her best efforts and loyalty to Employer
and specifically upon the promise that Employee will NOT while in the employ of
Employer enter the employ or otherwise perform work or services for any
enterprise in competition with Employer.

B.       … During the term of this Agreement, Employee shall not enter into any
agreement, contract or understanding that would restrict or prohibit Employee from
undertaking or performing all of Employee's obligations under this Agreement.

Section 2:

The Employee hereby agrees to devote his or her best attention, knowledge and
skills faithfully, diligently and to the best of his or her ability, in the furtherance of
the business of the Employer, [. . . ]. During [. . . ] Employee's employment with
Employer, the Employee shall not compete, directly or indirectly, with Employer
. . .

4

15.    In addition to the provisions of sections 1 and 2 of each Employment Agreement, each of the Defendants' Employment Agreements contain additional specific provisions that they owe a duty of loyalty to Homespire while employed by Homespire.  Specifically, section 4 of the Employment Agreements signed by Robins and LeBlanc states, *inter alia*, "Employee understands that he or she owes a duty of loyalty to the Employer during the term of this Agreement."  Section 8 of the Employment Agreements signed by Nguyen, Thomas, Sanith, and Tran states, *inter alia*:

> Duty of Loyalty. During his/her employment with Employer, Employee has, to the fullest extent of the law, a duty to act solely for the benefit of Employer in all matters connected with his/her employment. This duty exists independent of this Agreement and shall not be diminished by anything set forth in this Agreement. Employee agrees that during his/her employment with Employer he/she will not own, manage, operate, consult for, directly or indirectly, intentionally or unintentionally, or become employed by or render any other services to, any other person, partnership, corporation, or other entity that engages in some or all of the same business as Employer and/or any business similar to, or in competition with, the business in which Employer is engaged. If Employee desires to engage in employment outside of his/her employment with Employer, Employee must promptly disclose this ahead of time to Employer's SVP, Human Resources and receive written approval beforehand, which approval may be withheld in the sole discretion of Employer.

> Employee specifically understands and agrees that his/her duty of loyalty to Employer includes, among other things, an obligation to not divert, directly or indirectly, individually and/or with others, any loan or prospective loan, any customer or prospective customer, any referral source, any business opportunity or any financial undertaking of Employer to or on behalf of any third party individual or entity (or that in any manner is for Employee's personal benefit). For example, Employee represents that he/she understands that his/her duty of loyalty specifically includes an obligation to not suggest, hint, encourage, direct or facilitate any customer or prospective customer or referral source of Employer to "move" or transfer, a loan to (or to make a loan application with or through) a third party or to "follow" Employee to any new employer.

16.    In addition to the provisions of sections 1 and 2 of each Employment Agreement, each Employment Agreement contains additional specific provisions that Homespire's employees will not solicit other Homespire employees or customers of Homespire.  Specifically, section 5 of the Employment Agreements signed by Gregory, Robins and LeBlanc states, *inter alia*:

A.    Except on behalf of Employer, during Employee's employment with Employer and for a period of twenty-four (24) months following termination of employment, either voluntarily or involuntarily, Employee shall neither directly nor indirectly contact, solicit, nor induce any person, corporation, or other entity to contact or solicit, any person or entity who, or which, at any time during the term of Employee's employment or at the time of Employee's termination, was a customer, a prospective customer, or a referral from a customer or prospective customer or referral source of Employer. The term "prospective" includes a person or entity who or which was contacted by Employer or · by someone on behalf of Employer, during the term of Employee's employment for the purposes of soliciting or obtaining mortgage loan business.

B.    Employee shall not, directly or indirectly, solicit, induce or encourage any person either to leave the employ of Employer or to seek, obtain or accept employment with any person or entity other than Employer during the employment term and for a period of twenty-four (24) months following termination of employment, whether voluntarily or involuntarily. This restriction shall not apply to those employees who were introduced to Employer by Employee and/or hired to assist Employee. The employees who are not subject to this restriction shall likewise be permitted to work with or for Employee and will not be bound by any restriction in their own employment agreement.

Section 5 of the Employment Agreements signed by Nguyen, Thomas, Sanith and Tran states,

*inter alia*:

A.    Throughout the time of his/her employment with the Employer and for a period of (12) months after the last day of his/her employment with the Employer for any reason, Employee, for Employee and/or for others, without the Employer's prior written consent, directly or indirectly, individually or with, for, or on behalf of a third party, shall not solicit business from, or assist in any way in the solicitation of business from, or provide services or products that are the same or substantially similar to the services or products provided by Employer to, any of the Employer's customers or prospective customers (as defined in this Agreement). For avoidance of doubt, this restriction is inclusive of situations where Employer's customers or prospective customers contact or solicit Employee.

* * *

B.    Throughout the time of his/her employment with the Employer and for a period of twelve (12) months after the last day of his/her employment with the Employer, Employee shall not, for Employee and/or for others, without the Employer's prior written consent, directly or indirectly, individually or with, for, or on behalf of a third party, hire or solicit for hire, or induce any employee of Employer and/or its current or future affiliates, to terminate such employee's employment, or reduce the scope of such employee's employment, with Employer.

6

17.    In Section 6 of the Employment Agreements signed by Gregory, Robins, LeBlanc, Sanith, Nguyen and Tran, each employee agreed, *inter alia*, to maintain and not disclose to any third party or use for their personal benefit confidential information of Homespire, including, Homespire's business operations, customers, customer lists, prospective customers and pending and closed loan files.

18.    In Section 7 of the Employment Agreement signed by Gregory, Robins, LeBlanc, Sanith, Nguyen and Tran, each employee agreed, *inter alia*, immediately upon the conclusion of their employment with Homespire, to:

> a. return to Homespire all, and not keep any confidential or proprietary information of Homespire;
>
> b. return to Homespire (1) the entire Loan file, any copies thereof or copies of portions thereof, and any related documentation for every Loan in process or funded by the employee under the name of Homespire Mortgage Corporation or under Homespire's license;
>
> c. provide to Homespire a list of all loans in Employee's pipeline or being processed under Employer's name. This list shall identify: (1) the name, address and telephone number of the borrower; (2) the address or the property to be secured by the loan; (3) the name, address and telephone number of the lender; and (4) the amount of the loan.

19.    It is common practice among mortgage lending companies to require their employees, including branch managers, loan officers and loan officer assistants, to enter into employment agreements with terms and restrictive covenants similar to the terms and restrictive covenants contained in Employment Agreements signed by Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran.

**B.    Gold Star, Mitchell and the Homespire employees**

20.    Gold Star represents itself to be "one of the nation's premier mortgage companies, originating billions in home loans in branches from coast-to-coast." With its "consistent growth

7

during the past two decades," it has been "[n]amed one of the fastest growing companies by Inc. Magazine." https://www.goldstarfinancial.com/about.  Gold Star aggressively markets to and recruits new loan officers and branches lured from competitors.  *See*, https://www.joingoldstarmortgage.com/.

21.    Mitchell is employed by Gold Star as its Executive Vice President – National Retail.  According to Mitchell's LinkedIn profile: "As Executive Vice President - National Retail for Gold Star Mortgage Financial Group, I am charged with employing our growth strategy, outreach and long term development by attracting and developing the highest caliber mortgage professionals and branches."

22.    As stated in his LinkedIn profile, Mitchell is tasked by Gold Star to solicit and recruit branch managers, loan officers and associated staff and/or entire branch to Gold Star.

23.    When Mitchell joined Gold Star in February 2015, Gold Star had about 20 branches, and as of early February 2021, it had nearly 60 branches.

24.    On information and belief, Gold Star, like many mortgage lenders, utilizes employment agreements with its employees that contain provisions, like the provisions in the Homespire employment agreements referenced above, prohibiting employee's solicitation of their co-workers to leave Gold Star, and Gold Star and Mitchell are further aware of the practice in the industry in general.

25.    In or about January 2019, Mitchell and Gregory began discussions for Gregory to leave Homespire to join Gold Star.

26.    On February 28, 2019, Gregory specifically informed and/or put Mitchell on notice that Gregory was subject to restrictions against soliciting Homespire employees.  Specifically, Gregory sent Mitchell the following email:

**From:**         jake@thehomeloanplanner.com
**Sent:**         Thursday, February 28, 2019 9:34 AM
**To:**         'Eric Mitchell'
**Cc:**         Chelsi Gregory
**Subject:**         Recruiting a specific Loan Officer
**Attachments:**         image001.jpg; image002.jpg; image004.png; image005.png;
         image006.png; image007.png;  image008.png

Hi Eric,

I wanted to see if this transition occurs if you could reach out to a specific loan officer for recruitment to my branch?  This person has a couple of people on his team and produces a good amount of revenue. As he works for the same company that I currently do, I would not be able to directly recruit due to hiring agreements that were signed, but if I had a 3rd party that could call/talk briefly with him for a little rapport and building up the company, I can connect with him and close the deal if you "recommend he speaks with me."

Let me know if this is something of a possibility as I have my targets highly focused on him and one other when we decide to make a transition.

27.      By Gregory's February 28, 2019 email to Mitchell, Mitchell and Gold Star were provided actual and/or constructive notice that Gregory was subject to contractual covenant that he could not solicit employees of Homespire.

28.      Mitchell enthusiastically responded to Gregory that he would be happy to help Gregory breach the terms of his Employment Agreement with Homespire:

**From:**         Eric Mitchell <emitchell@goldstarfinancial.com>
**Sent:**         Thursday, February 28, 2019 10:11 AM
**To:**         jake@thehomeloanplanner.com
**Cc:**         Chelsi Gregory
**Subject:**         Re: Recruiting a specific Loan Officer
**Attachments:**         image001.jpg; image002.jpg; image004.png; image005.png;
         image006.png; image007.png; image008.png

100% yes
I am happy to serve

Eric T. Mitchell
Executive Vice President - National Retail
http://www.Eric-Mitchell.com
http://www.GoldStarMtg.net
Phone: 310-356-7388 ext.729
iPhone. iBrevity. iTypos. iApologize.

29.     Gregory resigned from Homespire in July 2019.

30.     On information and belief, following his resignation from Homespire, Gregory and Mitchell combined to, and did directly and indirectly, contact and attempt to solicit and recruit multiple employees of Homespire in Virginia and West Virginia to leave Homespire and to join Gold Star.

31.     In March 2021, Mitchell and Gold Star again set their sights on Homespire and successfully raided Homespire's Baton Rouge branch by intentionally interfering with one or more of Homespire's Baton Rouge branch employee's employment agreement(s), conspiring with one and aiding and abetting one or more or more of Homespire's employees to breach their employment agreement(s).

32.     The flight of Homespire's Baton Rouge branch began when Homespire received an email sent at 6:54 pm on March 16, 2021, by which, without prior notice to Homespire, Robins resigned effective immediately.  On information and belief, that same day Robins became an employee of Gold Star.

33.     At 5:17 pm on March 16, 2021, Homespire became aware that LeBlanc was planning to resign and to take Homespire business with her to Gold Star because she sent the following email to Homespire from an email account at Gold Star, and with a signature block indicating she was employed by and that her Nationwide Multistate Licensing System ("NMLS") license was with Gold Star:[1]

---

[1] According to the NMLS' website, NMLS is the system of record for non-depository, financial services licensing or registration in participating state agencies. In these jurisdictions, NMLS is the sole system of licensure for mortgage companies for 58 state agencies and the sole system of licensure for Mortgage Loan Originators (MLOs) for 59 state and territorial agencies.  NMLS is also the system of record for the registration of MLOs under the Consumer Financial Protection Bureau's Regulation G (S.A.F.E. Mortgage Licensing Act – Federal Registration of Residential Mortgage Loan Originators), published December 19, 2011.  https://nationwidelicensingsystem.org/about/Pages/default.aspx.  MLOs are not permitted to place their license with more than one lender at a time, as LeBlanc apparently did.

**From:** Amy Leblanc <aleblanc@goldstarfinancial.com>
**Sent:** Tuesday, March 16, 2021 5:17 PM
**To:** tphillips@homespiremortgage.com
**Subject:** Loans
**Attachments:** image001.jpg

Hi Tina,
I'm sure you've heard about my resignation. I appreciate all your help over the last few months.

Not all my pipeline will close at Homespire. Here's a list of the loans closing there:
1. Warren – closing 3/19
2. Green – closing 3/19 or as soon as possible
3. Jones – closing 3/23 or as soon as possible
4. Anderson – closing 3/24

Please let me know if there's anything I can help you with!

**Amy LeBlanc** | *Sr. Loan Officer*
Gold Star Mortgage Financial Group | NMLS #3446
100 Phoenix Drive | Suite 300 | Ann Arbor, MI 48108
O: (225) 445-0530| F: 734-272-4789 | E: aleblanc@goldstarfinancial.com | W: www.goldstarfinancial.com

34.     At 8:39 pm on March 16, 2021, LeBlanc sent another email to Homespire by which she resigned "effective immediately."

35.     At 8:01 pm on March 16, 2021, without prior to notice to Homespire, Sanith sent Homespire an email submitting his resignation from Homespire "effective immediately." Sanith's email was also courtesy copied to Robins and to Mitchell. On information and belief, Sanith became employed by Gold Star on or about March 16, 2021.

36.     At 6:49 pm on March 16, 2021, without prior to notice to Homespire, Tran resigned from Homespire effective immediately. On information and belief, Tran became employed by Gold Star on or about March 16, 2021.

37.     On information and belief, Robins, LeBlanc, Sanith and Tran solicited, induced, encouraged and/or combined with one another, in violation of their Employment Agreements with Homespire, to leave the employ of Homespire and/or to seek employment with Gold Star.

38.     At all relevant times prior to March 16, 2021, Mitchell and Gold Star knew or had constructive knowledge of the non-solicitation provisions of the Employment Agreements between Homespire and Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran.

39.     On March 16, 2021, counsel for Homespire gave written notice to Gold Star of the existence of Homespire's contracts with Robins, Leblanc, Tran, and that each agreement contained provisions to maintain confidential information, and non-solicitation of Homespire's customers and employees.

40.     On March 19, 2021, Nguyen and Thomas resigned effective that same day and became employees of Gold Star.  Nugyen's and Thomas' resignations not only were without prior notice but came on the heels of their assurances to Homespire that they were not resigning to join Robins, LeBlanc, Sanith and Tran at Gold Star.

41.     On information and belief, Robins, LeBlanc, Sanith and Tran solicited, induced, encouraged and Thomas and Nguyen, and Thomas and Nguyen solicited, induced, encouraged and/or combined with one another, in violation of their Employment Agreements with Homespire, to leave the employ of Homespire and/or to seek employment with Gold Star.

42.     With actual or constructive knowledge of Homespire's agreements with its Baton Rouge branch employees, Mitchell and Gold Star nevertheless encouraged, aided and abetted and combined with one or more of Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran to breach their Employment Agreement(s) with Homespire by soliciting, directly or indirectly, one another to leave Homespire and join Gold Star.

43.    On information and belief, Robins was paid by Gold Star bonus(es) and/or other compensation for each loan officer from Homespire's Baton Rouge branch office that left Homespire to join Gold Star.

44.    As a result of the coordinated mass resignation and defection to Homespire's competitor, Homespire's Baton Rouge branch ceased to exist.

45.    In the weeks leading up to Homespire's Baton Rouge branch employees' coordinated mass resignation from Homespire, the volume of production in the Baton Rouge branch declined.  The decline in production was unusual given the branch's prior production and the extremely strong mortgage lending market during the COVID-19 pandemic.

46.    On information and belief, in preparation for their resignation from Homespire to join Gold Star, Homespire's Baton Rouge branch employees began steering actual and potential mortgage loan applicants, i.e., customers, of Homespire to Gold Star and/or improperly delayed or deferred processing new business for Homespire in order to steer or process that new business to themselves once at their new employer.

47.    Additionally, as stated in LeBlanc's March 16, 2021 email, LeBlanc, and on information and belief, others of Homespire's Baton Rouge branch employees improperly caused actual and potential customers in Homespire's loan application pipeline to move their applications to Gold Star.  Homespire was made aware by Gold Star of at least four (4) loans in Homespire's Baton Rouge branch pipeline (M. Martin, D. Fielder, J. Bryant and S. Davis), and Homespire is aware of at least one other loan (C. Pham), that were transferred to Gold Star by one or more of the Defendants.

48.    The actions of the Baton Rouge branch employees constituted breaches of the terms of their Employment Agreements cited above.

49.    As a direct and proximate result of Defendants' actions, Homespire has suffered direct and/or special damages including the loss of its Baton Rouge branch employees, customers in its pipeline and the revenue that would have been derived therefrom, and the loss of future revenue and good will from the Baton Rouge branch.

## COUNT I
**Tortious Interference with Employment Agreements**

50.    The allegations of the preceding paragraphs are incorporated herein by reference.

51.    Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran are each a party to a valid, enforceable contract in the form of the Employment Agreement each has with Homespire.

52.    Mitchell and Gold Star were aware of the existence of Homespire's Employment Agreements with Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran, and the Agreements' non-solicitation, duty of loyalty and confidentiality provisions.

53.    Mitchell and Gold Star were further aware of the implied duty of loyalty owed by every employee to his/her employer, including Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran to Homespire.

54.    Mitchell and Gold Star willfully and intentionally caused Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran to violate and thereby breach the terms of their Employment Agreement(s) with Homespire, by directly or indirectly soliciting other employees of Homespire to leave Homespire to join Gold Star.

55.    Mitchell and Gold Star willfully and intentionally caused Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran to violate and thereby breach the terms of their Employment Agreement(s) with Homespire, and to violate the duty of loyalty owed to Homespire, by, *inter alia*, misappropriating and/or misusing the confidential information of Homespire, soliciting,

14

transferring and/or diverting the actual and potential customers of Homespire to Gold Star while still employed by Homespire.

56.     Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran did in fact breach their Employment Agreement(s) with Homespire by soliciting, directly or indirectly, other employees of Homespire to leave Homespire.

57.     Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran did, in fact, violate and breach the terms of their Employment Agreement(s) with, and duty of loyalty owed to, Homespire by, *inter alia*, misappropriating and/or misusing the confidential information of Homespire, soliciting, transferring and/or diverting the actual and potential customers of Homespire to Gold Star while still employed by Homespire.

58.     In interfering with Homespire's contracts with Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran, Defendants acted willfully and maliciously and in conscious disregard for the rights of Homespire.

59.     As a direct and proximate result of Defendants' tortious interference with Homespire's contracts with Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

## COUNT II
**Tortious Interference with Business Expectancy and/or Prospective Economic Advantage**

60.     The allegations of the preceding paragraphs are incorporated herein by reference.

61.     Homespire had a business expectancy in making the loans to the customers identified herein and others that were wrongfully diverted or transferred to Gold Star by Homespire's Baton Rouge branch employees.  This expectancy presented the probability of future economic benefit to Homespire.

15

62.    Gold Star was aware of Homespire's business expectancy in the customers and prospective customers of Homespire that Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran caused to be solicited, transferred and/or diverted to Gold Star.

63.    Gold Star knowingly and intentionally interfered with Homespire's business expectancy by and through the use of the improper means, methods and actions described herein.

64.    In interfering with Homespire's business expectancies, Gold Star acted willfully and maliciously and in conscious disregard for the rights of Homespire.

65.    Absent Gold Star's wrongful conduct and interference, it is reasonably certain that Homespire would have realized the business expectancies.

66.    As a direct and proximate result of Gold Star's wrongful conduct and interference with Homespire's business expectancies, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

### COUNT III
### Aiding and Abetting Breach of Duty of Loyalty and Breach of Fiduciary Duty

67.    The allegations of the preceding paragraphs are incorporated herein by reference.

68.    Gold Star knew that Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran owed a common law duty of loyalty and/or a fiduciary duty to Homespire while they were still employed with Homespire.

69.    Gold Star knew that the actions of Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran described herein constituted tortious conduct that breached the duty of loyalty and/or the fiduciary duty that each owed to Homespire.  Specifically, Gold Star enabled, encouraged, aided and abetted and assisted Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran to misappropriate and misuse confidential information of Homespire, and to transfer, solicit and/or divert actual and potential customers of Homespire to Gold Star.

16

70.     In enabling, encouraging, aiding and abetting and assisting Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran to misappropriate and misuse the confidential information of Homespire, and to transfer, solicit and/or divert actual and potential customers of Homespire to Gold Star, Gold Star acted willfully and maliciously and in conscious disregard for the rights of Homespire and with the intent to harm Homepire.

71.     Gold Star's assistance and encouragement was a substantial factor in causing the tortious conduct asserted herein, which injured Homespire.

72.     As a direct and proximate result of Gold Star's wrongful conduct and aiding and abetting Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran to breach their duty of loyalty and/or fiduciary duty owed to Homespire, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

## COUNT IV
### Aiding and Abetting Violation of Louisiana Uniform Trade Secrets Act

73.     The allegations of the preceding paragraphs are incorporated herein by reference.

74.     The names and contact information of persons solicited by or referred to Homespire for mortgage loans, and that make application for mortgage loans, including the actual and potential customers identified herein, are not generally known to, or ascertainable by proper means by, other persons or entities, and are Homespire's confidential information and trade secrets.

75.     Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran had access to the identities of the customers and potential customers of Homespire in the pipeline of Homespire's Baton Rouge branch exclusively during and through their employment with Homespire, and were not authorized or permitted by Homespire to misappropriate, disclose or use such information except for purposes of Homespire's business.

17

76.     Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran wrongfully misappropriated and disclosed Homespire's confidential information and trade secrets to Gold Star and/or otherwise used Homespire's confidential information and trade secrets for their own personal benefit at the expense and detriment of Homespire by causing customers to be diverted away from Homespire.

77.     The actions of Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran violated the Louisiana Uniform Trade Secrets Act, LA Rev Stat §51:1432, *et seq.*

78.     The actions of Gold Star described herein aided and abetted the violation of the Louisiana Uniform Trade Secrets Act, LA Rev Stat §51:1432, *et seq.*, by Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran.

79.     As a direct and proximate result of the violation of the Louisiana Uniform Trade Secrets Act, LA Rev Stat §51:1432, *et seq.*, by Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

## COUNT V
**Misappropriation of Trade Secrets –
Louisiana Uniform Trade Secrets Act, LA Rev Stat §51:1432, *et seq.***

80.     The allegations of the preceding paragraphs are incorporated herein by reference.

81.     The names and contact information of persons solicited by or referred to Homespire for mortgage loans, and that make application for mortgage loans, including the actual and potential customers identified herein, are not generally known to, or ascertainable by proper means by, other persons or entities, and are Homespire's trade secrets.

82.     Robins, LeBlanc, Sanith, Nguyen, Thomas and Tran had access to the identities of the customers and potential customers of Homespire in the pipeline of Homespire's Baton Rouge

branch exclusively during and through their employment with Homespire, and were not authorized or permitted by Homespire to misappropriate, disclose or use such information except for purposes of Homespire's business.

83.     Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran wrongfully misappropriated and disclosed Homespire's trade secrets to Gold Star, which knew or had reason to know that it was acquiring Homespire's trade secrets by improper means and in violation of their duty of loyalty owed to Homespire.

84.     Gold Star used the improperly acquired trade secrets of Homespire to the detriment of Homespire, and for the benefit of Gold Star.

85.     As a direct and proximate result of Gold Star's misappropriation and use of Homespire's trade secrets, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

## COUNT VI
### Conspiracy

86.     The allegations of the preceding paragraphs are incorporated herein by reference.

87.     Mitchell and Gold Star agreed, conspired and/or otherwise combined with Gregory, Robins, LeBlanc, Sanith, Nguyen and/or Tran to injure Homespire in its business.

88.     In furtherance and/or completion of the agreement, conspiracy or combination, Gregory, Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran breached their contractual obligations and common law duty of loyalty and/or fiduciary duty owned to Homespire not to solicit, directly or indirectly, other employees of Homespire, and Robins, LeBlanc, Sanith, Nguyen, Thomas and/or Tran.  Additionally, they breached their contractual and common law duty of loyalty and/or fiduciary duty owed to Homespire, did actually misappropriate and misuse

Homespires' confidential information and trade secrets and caused customers and prospective customers of Homespire to be solicited by, transferred to and/or diverted to Gold Star.

89.     Defendants' agreement, conspiracy and combination, and the actions taken in furtherance and/or in completion of the conspiracy, were taken willfully and maliciously and in conscious disregard for the rights of Homespire and with the intent to harm Homepire.

90.     As a direct and proximate result of Defendants' wrongful conduct, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

## COUNT VII
**Unjust Enrichment**

91.     The allegations of the preceding paragraphs are incorporated herein by reference.

92.     Gold Star has been and will be unjustly enriched as a result of the wrongful solicitation of Homespires' employees and the income they generate for Gold Star, and by Gold Star's misappropriation and misuse of Homespire's confidential information and diversion of Homespire's customers and prospective customers to Gold Star, and actively and/or passively receiving benefits of monetary income and good will derived from those employees and customers.

93.     It would be unconscionable for Gold Star to retain such benefits without compensation to Homespire.

94.     Accordingly, equity and good conscience requires disgorgement of the ill-gotten gains that Gold Star obtained and will obtain by the wrongful solicitation of Homespire's employees and receipt and use of Homespire's confidential information, the breaches of Homespire's duty of loyalty, and diversion of Homespire's customers and prospective customers.

**COUNT VIII**
**Respondeat Superior**

95.     The allegations of the preceding paragraphs are incorporated herein by reference.

96.     The actions of Mitchell, and the actions of Gregory, Robins, LeBlanc, Sanith and/or Tran to solicit employees of Homespire after they joined Gold Star, and their actions and the actions of other employees of Gold Star, to solicit, divert and transfer actual and potential customers of Homespire to Gold Star, were within the ordinary course of Gold Star's business and within the scope of their authority in conducting Gold Star's business.

97.     The actions alleged herein of Mitchell, and the actions of Gregory, Robins, LeBlanc, Sanith and/or Tran after they joined Gold Star, and the actions of other employees of Gold Star, were actually or impliedly directed by their employer, Gold Star, and were taken with the intent to benefit or to further the interests of their employer, Gold Star.

98.     As a direct and proximate result of the actions of Mitchell, Gregory, Robins, LeBlanc, Sanith and/or Tran and the other employees of Gold Star, Homespire has suffered (and will continue to suffer) damages and has been forced to incur attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Homsepire Mortgage Corporation, requests that the Court enter judgment in its favor, against Defendants:

(i)      as to each Count, against Defendants as pleaded therein, jointly and severally where pleaded against more than one Defendant, for actual, compensatory, consequential, special, incidental damages and disgorgement of profits, in an amount of not less than $1,500,000.00;

(ii)     as to each Count, for treble, exemplary and/or punitive damages as may be available or allowed under common law or by statute;

(iii)    temporary and permanent injunctions, under common law, equity enjoining Defendants from aiding and abetting Homespire's employees to breach their agreements and common law duties to Homespire, conspiring to injure Homespire's business, misappropriation and use of Homespire's confidential information and trade secrets.

(iv)    reasonable attorneys' fees pursuant to the Louisiana Uniform Trade Secrets Act and/or as otherwise available at law or equity, and costs of court;

(v)    prejudgment and post judgment interest at the maximum rate permitted by applicable law;

(vi)    such other and further relief, whether at law or equity, general or specific, to which Homespire may otherwise be justly entitled.

## JURY DEMAND

Plaintiff, Homespire Mortgage Corporation, demands a trial by jury of all claims so triable.

Respectfully submitted,


*s/ Susan Fahey Desmond*
Susan Fahey Desmond (Bar # 25380)
Susan.Desmond@jacksonlewis.com
Amanda Wingfield Goldman (Bar # 30800)
Amanda.Goldman@jacksonlewis.com
**JACKSON LEWIS P.C.**
650 Poydras Street, Suite 1900
New Orleans, Louisiana  70130
Telephone:    (504) 208-1755
Facsimile:    (504) 208-1759

Jeffrey M. Mervis, VSB 30794
(*Application pro hac vice to be submitted*)
The Mervis Law Firm, LLC
12505 Park Potomac Avenue, 6th Fl.
Potomac, MD 20854
Tel: 301-762-0020
Fax: 301-762-0229
jmervis@mervislaw.com

**Counsel for Plaintiff Homespire Mortgage Corporation**