UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

HOMESPIRE MORTGAGE CORPORATION

CIVIL ACTION

VERSUS

GOLD STAR MORTGAGE FINANCIAL GROUP, CORPORATION, ET AL.

NO. 21-00306-BAJ-SDJ

### RULING AND ORDER

This commercial dispute features two competitors in the residential mortgage loan market—Plaintiff Homespire Mortgage Corporation ("Homespire") and Defendant Gold Star Mortgage Financial Group ("Gold Star")—as well as Gold Star's Executive Vice President of National Retail, co-Defendant Eric Todd Mitchell.

Now before the Court is Defendants' **Motion To Dismiss All Counts Under Rules 12(b)(2) And 12(b)(6) (Doc. 13).** Writ large, Defendants argue that the Court lacks personal jurisdiction over Mr. Mitchell, and, further, that Homespire's allegations fail to state any actionable claim against Gold Star. (Doc. 13-1). Homespire opposes Defendants' motion. (Doc. 18).

Defendants' motion will be denied. The Court agrees that Homespire's Complaint, in its current form, fails to set forth "sufficient minimum contacts" to establish the Court's personal jurisdiction over Mr. Mitchell, a resident of California. Still, however, Homespire's allegations plausibly suggest that such requisite contacts *may* exist, and, in lieu of dismissal, the Court will allow limited discovery aimed to uncover Mr. Mitchell's connections to Louisiana (if any). The Court will defer ruling

on Defendants' remaining arguments for dismissal pending completion of jurisdictional discovery and Homespire's submission of an amended complaint.

## I. RELEVANT BACKGROUND

The Court accepts the following allegations as true for present purposes:

Plaintiff Homespire is a residential mortgage lender with offices in various locations nationwide. (Doc. 1 at ¶ 6). Until March 2021, Homespire operated a branch office in Baton Rouge, Louisiana, where it employed six loan officers: Katherine Robins, Amy LeBlanc, Nathan Nguyen, Mary Kaye Thomas, Jack Sanith, and Vicki Tran (collectively, the "Baton Rouge Loan Officers"). (*Id.* at ¶¶ 8-13).

Each of Homespire's Baton Rouge Loan Officers was hired and employed subject to Homespire's standard Employment Agreement. Relevant here, Homespire's Employment Agreement states that Homespire's loan officers shall not (1) perform work on behalf of Homespire's competitors, (*id.* at ¶ 14); (2) solicit clients *or* employees away from Homespire, (*id.* at ¶ 16); or (3) disclose Homespire's "confidential information," specifically including Homespire's business operations, customers, customer lists, prospective customers and pending and closed loan files, (*id.* at ¶ 17). Additionally, Homespire's Employment Agreement imposes a duty of loyalty on its loan officers during the term of their employment. (*Id.* at ¶ 15). Finally, Homespire's Employment Agreement requires that at the end of their employment, Homespire's loan officers must return all Homespire's confidential and proprietary information; must also return all files and documents related to "every Loan in process or funded" under Homespire's name; and must "provide to Homespire a [detailed] list of all loans in [the] pipeline or being processed under [the loan officer's]

2

name." (*Id.* at ¶ 18).

Defendant Gold Star is Homespire's competitor in the mortgage lending business. (Doc. 1 at ¶ 20). Gold Star touts itself as "one of the fastest growing companies" in the industry, and employs Co-Defendant Mr. Mitchell—a California resident—to identify and recruit loan officers away from competing mortgage lenders. (*Id.* at ¶¶ 2, 20-21).

In January 2019, Mr. Mitchell set Gold Star's sights on Homespire as a source of new loan officers. (*Id.* at ¶ 25). Mr. Mitchell's first target was Jake Gregory, a Homespire loan officer employed in Homespire's Martinsburg, West Virginia branch office. (*Id.* at ¶¶ 6, 25). In February 2019, as he was being recruited to Gold Star, Mr. Gregory sent an email informing Mr. Mitchell of Homespire's Employment Agreement and its restrictions against Homespire loan officers recruiting other Homespire loan officers to leave the firm. Mr. Gregory wrote:

> **From:** jake@thehomeloanplanner.com
> **Sent:** Thursday, February 28, 2019 9:34 AM
> **To:** 'Eric Mitchell'
> **Cc:** Chelsi Gregory
> **Subject:** Recruiting a specific Loan Officer
> **Attachments:** image001.jpg; image002.jpg; image004.png; image005.png; image006.png; image007.png; image008.png
>
> Hi Eric,
>
> I wanted to see if this transition occurs if you could reach out to a specific loan officer for recruitment to my branch? This person has a couple of people on his team and produces a good amount of revenue. As he works for the same company that I currently do, I would not be able to directly recruit due to hiring agreements that were signed, but if I had a 3rd party that could call/talk briefly with him for a little rapport and building up the company, I can connect with him and close the deal if you "recommend he speaks with me."
>
> Let me know if this is something of a possibility as I have my targets highly focused on him and one other when we decide to make a transition.

3

(*Id.* at ¶ 26). Mr. Mitchell replied within the hour, sending a brief, but enthusiastic response: "100% yes [sic] I am happy to serve". (*Id.* at ¶ 28). Four months later, in July 2019, Mr. Gregory left Homespire and joined Gold Star. (*Id.* at ¶ 29). After landing Mr. Gregory, Mr. Mitchell broadened his outreach to Homespire's employees, targeting multiple additional loan officers in Homespire's Virginia and West Virginia branch offices. (*Id.* at ¶ 30).

In March 2021, Mr. Mitchell turned his attention to Homespire's Baton Rouge, Louisiana branch office. Again, as part of his recruitment strategy, Mr. Mitchell encouraged and induced Homespire's Baton Rouge Loan Officers to solicit and recruit *each other* to defect to Gold Star. (*Id.* at ¶¶ 30, 41-42). Mr. Mitchell's tack proved wildly successful: between March 16 and March 19, 2021, *all* six of Homespire's Baton Rouge loan officers—Robins, LeBlanc, Sanith, Nguyen, Thomas *and* Tran—quit Homespire and joined Gold Star, decimating Homespire's Baton Rouge branch. (*Id.* at ¶¶ 32-40, 44). Notable for present purposes, Jack Sanith courtesy copied Mr. Mitchell to his March 16 resignation email. (*Id.* at ¶ 35).

In the weeks preceding their mass defection, the Baton Rouge Loan Officers steered actual and prospective Homespire customers to Gold Star, delayed processing new mortgage applications so that they could be processed under Gold Star's name, and caused at least five "customers in Homespire's loan application pipeline to move their applications to Gold Star." (*Id.* at ¶¶ 45-47). As a result, Homespire lost customers, revenue, and goodwill, in addition to suffering the collapse of its Baton Rouge branch. (*Id.* at ¶ 49).

4

## II. PROCEDURAL HISTORY

On May 25, 2021, Homespire initiated this action against Gold Star and Mr. Mitchell, seeking actual damages of "not less than" $1.5 million, punitive damages, and injunctive relief. (Doc. 1 at pp. 21-22). Based on the allegations outlined above, Homespire's Complaint asserts claims of tortious interference with contract (Count I); tortious interference with business expectancy (Count II); aiding breach of duty of loyalty and breach of fiduciary duty (Count III); aiding violation of the Louisiana Uniform Trade Secrets Act (Count IV); misappropriation of trade secrets (Count V); conspiracy (Count VI); unjust enrichment (Count VII); and respondeat superior (Count VII). (*Id.* at ¶¶ 50-98).

Now, Defendants seek dismissal of Homespire's action, arguing that the Court lacks personal jurisdiction over Mr. Mitchell, and that, in any event, Homespire has failed to allege any plausible claim against either Gold Star or Mr. Mitchell. (Doc. 13). Homespire opposes Defendants' motion. (Doc. 18).

For reasons below, the Court agrees that Homespire's allegations fail to establish personal jurisdiction over Mr. Mitchell. The Court further determines, however, that Homespire is entitled to limited jurisdictional discovery, and the opportunity to submit an amended complaint pending completion of such discovery. The Court will defer ruling on Defendants' remaining arguments in support of dismissal pending submission of Homespire's amended complaint.

## III. LAW AND ANALYSIS

### i. Standard

Personal jurisdiction is "an essential element of the jurisdiction of a district

court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). In considering a motion to dismiss for lack of personal jurisdiction, the Court must accept the plaintiff's "uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S. Constitution. *Revell*, 317 F.3d at 469. Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction over a particular foreign defendant would offend federal due process. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

> The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice. Sufficient minimum contacts will give rise to either specific or general jurisdiction. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic. Specific jurisdiction arises when the

defendant's contacts with the forum arise from, or are directly related to, the cause of action.

*Revell*, 317 F.3d at 470 (quotation marks and footnotes omitted).

Upon determining that it lacks personal jurisdiction over a foreign defendant, the Court's first option is to dismiss the foreign defendant without prejudice. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999). Alternatively, the Court may authorize limited jurisdictional discovery where the plaintiff's "allegations … suggest with reasonable particularity the possible existence of the requisite contacts." *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).[1] Jurisdictional discovery may include "any combination of the recognized methods of discovery." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

### ii. Discussion

Guided by these principles, the Court easily determines that Homespire's Complaint fails to establish general jurisdiction over Mr. Mitchell, a California resident with no obvious ties to Louisiana. Indeed, Homespire does not even attempt to argue the point.

---

[1] As a third option, the Court may transfer the entire action "to any other such court … in which the action … could have been brought at the time it was filed." 28 U.S.C. § 1631; *see Donelon v. Pollick*, No. 20-cv-00177, 2021 WL 796145, at *6 (M.D. La. Mar. 2, 2021) (Jackson, J.) (transferring action to Middle District of Florida upon determining that personal jurisdiction was lacking over Florida banker defendants); *see also Harutyunyan v. Love*, No. 19-cv-41, 2019 WL 5551901, at *6 (E.D. La. Oct. 28, 2019) ("Although the Fifth Circuit has not squarely addressed this issue, it appears to this Court [that] the Fifth Circuit would agree that § 1631 authorizes transfers based on lack of subject matter jurisdiction, personal jurisdiction, or improper venue." (discussing *Dornbusch v. Comm'r*, 860 F.2d 611, 612 (5th Cir. 1988)). The parties have not briefed this alternative, and the Court does not address it here.

defendant's contacts with the forum arise from, or are directly related to, the cause of action.

*Revell*, 317 F.3d at 470 (quotation marks and footnotes omitted).

Upon determining that it lacks personal jurisdiction over a foreign defendant, the Court's first option is to dismiss the foreign defendant without prejudice. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999). Alternatively, the Court may authorize limited jurisdictional discovery where the plaintiff's "allegations … suggest with reasonable particularity the possible existence of the requisite contacts." *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).[1] Jurisdictional discovery may include "any combination of the recognized methods of discovery." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

### ii. Discussion

Guided by these principles, the Court easily determines that Homespire's Complaint fails to establish general jurisdiction over Mr. Mitchell, a California resident with no obvious ties to Louisiana. Indeed, Homespire does not even attempt to argue the point.

---

[1] As a third option, the Court may transfer the entire action "to any other such court … in which the action … could have been brought at the time it was filed." 28 U.S.C. § 1631; *see Donelon v. Pollick*, No. 20-cv-00177, 2021 WL 796145, at *6 (M.D. La. Mar. 2, 2021) (Jackson, J.) (transferring action to Middle District of Florida upon determining that personal jurisdiction was lacking over Florida banker defendants); *see also Harutyunyan v. Love*, No. 19-cv-41, 2019 WL 5551901, at *6 (E.D. La. Oct. 28, 2019) ("Although the Fifth Circuit has not squarely addressed this issue, it appears to this Court [that] the Fifth Circuit would agree that § 1631 authorizes transfers based on lack of subject matter jurisdiction, personal jurisdiction, or improper venue." (discussing *Dornbusch v. Comm'r*, 860 F.2d 611, 612 (5th Cir. 1988)). The parties have not briefed this alternative, and the Court does not address it here.

The Court further determines that Homespire's Complaint currently falls short of establishing specific jurisdiction over Mr. Mitchell. In fact, the only identifiable contact between Mr. Mitchell and Louisiana is Mr. Sanith's March 16, 2021 resignation email, which was allegedly sent to Homespire and "courtesy copied to ... Mitchell." (Doc. 1 at ¶ 35). And while this Court has repeatedly affirmed that a "single communication"—necessarily including a single email—*may* confer specific jurisdiction over a foreign defendant, this rule applies only when the *foreign defendant* directs the communication "into the forum," *and* the "'actual content' of that communication gives rise to an intentional tort." *See Blackmon v. Bracken Constr. Co., Inc.*, No. 18-cv-00142-BAJ-RLB, 2018 WL 4100684, at *2 (M.D. La. Aug. 28, 2018) (discussing authorities); *cf. Georgia Mobile Dental, LLC v. Napper*, No. 18-cv-269, 2018 WL 6037527, at *6 (M.D. La. Nov. 16, 2018) (Dick, C.J.) (foreign defendant's minimum contacts established by one in-person meeting in Baton Rouge, plus emails, telephone calls, and text messages directed at Louisiana). Here, Homespire's proof fails the first step of the analysis because Mr. Mitchell was merely the recipient of Mr. Sanith's resignation email, *not* the sender.

Having failed to show even one communication directed *from* Mr. Mitchell *to* Louisiana, or any other contact between Mr. Mitchell and Louisiana, Homespire cannot establish the requisite minimum contacts to confer this Court with specific jurisdiction over Mr. Mitchell. Still, however, the Court will not yet dismiss Mr. Mitchell from this action. After all, where there is smoke there is a good possibility of fire, and here there is a lot of smoke. Homespire's allegations establish that Mr.

Mitchell spearheaded a two-year campaign to encourage defection among Homespire's loan officers—beginning with Jake Gregory in Homespire's West Virginia branch—and to acquire these loan officers (and their books of business) for Gold Star, all the while knowing that Homespire's loan officers were prohibited by their Employment Agreements from participating in such a campaign. Ultimately, this campaign resulted in the wholesale destruction of Homespire's Baton Rouge branch, when, between March 16 and 19, 2021, all *six* of Homespire's loan officers jumped ship to Gold Star.

Homespire's allegations establish that Mr. Mitchell played at least *some* role in the Baton Rouge Loan Officers' mass defection, insofar as Mr. Sanith saw fit to copy Mr. Mitchell on his resignation email. Moreover, a fair reading of Homespire's Complaint suggests that Mr. Mitchell likely played a substantial role in these six defections, particularly given Mr. Mitchell's alleged history of working directly with individual Homespire loan officers to recruit other Homespire loan officers, as demonstrated by Mr. Mitchell's February 2019 email correspondence with Jake Gregory. Mr. Mitchell's alleged involvement in the defection of Homespire's Baton Rouge Loan Officers, if true, would likely be reflected in additional emails and other correspondences. Such additional correspondences may ultimately establish the requisite minimum contacts, conferring this Court with personal jurisdiction over Mr. Mitchell.

As such, the Court determines that this issue deserves additional exploration through limited jurisdictional discovery, as set forth below. *See Fielding*, 415 F.3d at

429. Further, the Court will allow Homespire to submit an amended complaint, pending completion of the jurisdictional discovery set forth herein. Finally, because "the jurisdictional issue is intertwined with the merits," *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)—insofar as the nature, extent, and content of Mr. Mitchell's communications to Homespire's Baton Rouge Loan Officers will likely inform the Court's jurisdictional analysis and its review of the merits of Homespire's claims—judicial efficiency will be served by reserving judgment on Defendants' remaining arguments for dismissal pending receipt of Homespire's amended complaint. Accordingly, Defendants' request for dismissal under Rule 12(b)(6) also will be denied, without prejudice to Defendants' right to timely reassert their arguments upon receipt of Homespire's amended complaint.[2]

## IV.  CONCLUSION

In sum, Homespire has made a sufficient showing that it may yet prove personal jurisdiction vis-à-vis Mr. Mitchell if provided the opportunity to conduct limited discovery. And because Homespire's jurisdictional discovery likely intertwines with the merits of Homespire's claims, and may result in supplementation and/or amplification of the allegations set forth in Homespire's original Complaint, the Court will defer ruling on Defendants' remaining arguments for dismissal pending submission of Homespire's amended complaint.

Accordingly,

---

[2] If, after close of limited jurisdictional discovery, Homespire elects *not* to timely amend its Complaint, Homespire's right to amend will be deemed waived, and Defendants may move for reconsideration of dismissal based on the arguments set forth in their current motion to dismiss.

**IT IS ORDERED** that Defendants' **Motion To Dismiss All Counts Under Rules 12(b)(2) And 12(b)(6) (Doc. 13)** be and is hereby **DENIED**, without prejudice to Defendants' right to reassert their arguments upon conclusion of the limited jurisdictional discovery set forth below.

**IT IS FURTHER ORDERED** that within 14 days of the date of this Order, Homespire shall propound discovery on Defendants aimed to establish Mr. Mitchell's contacts with the State of Louisiana, consistent with the limits set forth herein. The scope of such discovery shall include telephone calls, emails, text messages and other electronic communications relating to Mr. Mitchell's alleged efforts to recruit Homespire's Baton Rouge Loan Officers.

**IT IS FURTHER ORDERED** that Homespire's jurisdictional discovery permitted under this Order be and is hereby limited to six *total* requests for admission, six *total* written interrogatories,[3] and six *total* requests for production.[4]

**IT IS FURTHER ORDERED** that Defendants shall respond to Homespire's jurisdictional discovery within 30 days of receipt.

**IT IS FURTHER ORDERED** that Homespire shall file an amended complaint, if any, within 21 days of receipt of Defendants' response(s) to Homespire's

---

[3] Homespire is advised that the six written interrogatories permitted by this Order are *not* in addition to the 25 written interrogatories permitted by Federal Rule of Civil Procedure 33. Rather, any written interrogatory propounded to Defendants under this Order shall count against Rule 33's limit of 25 written interrogatories.

[4] Homespire may propound the discovery requests permitted by this Order to Gold Star and/or Mr. Mitchell. To be clear, however, regardless of how Homespire distributes its jurisdictional discovery between Gold Star and Mr. Mitchell, the sum total discovery shall not exceed six requests for admission, six written interrogatories, and six requests for production.

jurisdictional discovery requests. Homespire's failure to timely submit an amended complaint shall be deemed a waiver of Homespire's right to amend.

**IT IS FURTHER ORDERED** that Defendants shall file their response to Homespire's amended complaint (if any) within 14 days after service of the Homespire's amended complaint.

The deadlines set forth in this Order will not be modified or extended absent a showing of good cause. The parties are advised to expeditiously resolve any discovery disputes related to the jurisdictional discovery permitted by this Order. If, after meeting and conferring, the parties are unable to resolve a dispute over the jurisdictional discovery permitted by this Order, a timely filed discovery motion will toll the deadlines set forth herein.

Baton Rouge, Louisiana, this 23rd day of March, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA